[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16362
_____

D.C. Docket No. 4:14-cv-01603-KOB


PAUL BOYLE,

Plaintiff-Appellant,

versus

CITY OF PELL CITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 10, 2017)

Before JULIE CARNES and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

FAY, Circuit Judge:

_____

[*] Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

Paul Boyle, a former employee of the City of Pell City ("the City"), appeals the dismissal of his claims under state law and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, as well as the grant of summary judgment in favor of the City as to his claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  On appeal, Boyle argues that the district court erred by dismissing his FLSA and state-law claims because he sufficiently stated a claim under the FLSA and his state-law claims are not barred by Alabama's statutory notice requirement.  He further contends that he made a prima facie showing with respect to both of his Rehabilitation Act claims.  Contrary to Boyle's arguments, he failed to state a claim for a violation of the FLSA and his state-law claims are barred.  He also did not establish a prima facie case as to either of his Rehabilitation Act claims.  Accordingly, we affirm.

## I. BACKGROUND

Boyle was employed by the City's Street Department from March 2001 until October 2012.[1]  In June 2001, while working as a Heavy Equipment Operator, he suffered an on-the-job injury that caused him to develop spinal stenosis, chronic nerve pain, and other related conditions.  After the injury, he could no longer

---

[1] We take these facts from the third amended complaint and the exhibits filed during the litigation of the City's motion for summary judgment, construing the facts in the light most favorable to Boyle.  *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016) (stating that we view the facts in the light most favorable to the plaintiff when reviewing the grant of a motion to dismiss); *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) (stating that we view the facts in the light most favorable to the nonmoving party when reviewing the grant of a motion for summary judgment).

2

perform the duties of a Heavy Equipment Operator.  Mike Martin, the Street Department Superintendent, initially accommodated Boyle by letting him do office work.

In 2005, Martin began allowing Boyle to perform the duties of the Street Department Foreman, while the actual Foreman, Jeff Crowe, voluntarily worked as a mechanic.  On November 9, 2005, Boyle, Martin, and Judy Tipton, the City's Director of Human Resources, memorialized this arrangement through a written "[A]greement Between Mike Mar[tin] & Paul Boyle," in which Boyle agreed to act as the Street Department Foreman "for a period of time not exceeding but not limited to two years without renegotiating the agreement."  The agreement stated that this would be "considered a lateral move . . . at Heavy Equipment Operator['s] pay" (approximately $15.00 per hour), which was $8.00 or $9.00 less per hour than the Foreman rate.  Although Boyle performed the duties of a Foreman from 2005 until June 2012, he was paid at the Heavy Equipment Operator rate.  Crowe retained the Foreman job title and earned Foreman's pay during this time.

On June 6, 2012, Martin wrote a memorandum noting that the 2005 agreement was overdue for renegotiation.  He stated, "It is in my opinion . . . that [Boyle] is to be compensated for the time . . . that he has rendered, beyond the scope of the agreement, being the [Foreman]/Supervisor of the Street

3

Department . . . ."  The memorandum was signed by Boyle and Martin.  Although Boyle or Martin took the memorandum to Tipton, she refused to sign it.

Around the same time he wrote the memorandum, Martin retired from the Street Department and Greg Gossett became the new Superintendent.  Before Gossett was hired, Boyle heard a rumor that Gossett intended to fire him.  After hearing this, Boyle decided to apply for disability retirement.  He did not do anything to verify whether the rumor was accurate, and Gossett never told him, before he applied for disability retirement, that he would be fired.

Boyle filed his first application for disability retirement with the Retirement Systems of Alabama ("RSA") in June 2012, before Gossett became Superintendent.  Attached to his application was a "Report of Disability," in which a physician confirmed that, in his professional opinion, Boyle was "totally incapacitated for further performance of his . . . duty."  The physician further opined that the City could not make any reasonable accommodation that would allow Boyle to continue his employment.  The RSA denied Boyle's application.

Immediately after becoming Superintendent, Gossett removed Boyle from the Foreman position, replaced him with Crowe, and assigned Boyle to work inventory.  Boyle told Gossett that the physical activities involved in conducting inventory made the job hard for him to do, but Gossett ignored his complaints and told him to continue working.  Gossett also assigned Boyle to operate heavy

4

equipment on one day and disregarded Boyle's protests that he could not operate the equipment because of his back.  When Boyle asked to be returned to the Foreman position, Gossett refused.  Gossett stated that since Crowe had the title and received the pay he should do the work of the Foreman position.

Boyle filed a second application for disability retirement with the RSA in August 2012.  He attached another Report of Disability, which was substantially similar to the prior Report of Disability.  The RSA approved Boyle's second application; Boyle retired on October 1, 2012.  He also applied for disability benefits with the Social Security Administration and was ultimately approved.

On August 18, 2014, Boyle filed a complaint against the City, which he amended three times to assert violations of the Rehabilitation Act and FLSA, as well as state-law claims for quantum meruit, unjust enrichment, and breach of contract.  As to his Rehabilitation Act claims, he alleged that (1) the City unlawfully denied him a reasonable accommodation by refusing to return him to the Foreman position, and (2) he was constructively discharged.  He also argued that the City violated the FLSA by paying him overtime at the Heavy Equipment Operator rate rather than the Foreman rate.  Finally, he asserted that the City was liable under state law because it breached the 2005 agreement and failed to compensate him for the value of his services as a Foreman.

5

The City filed a motion to dismiss Boyle's FLSA and state-law claims, which the district court granted. The district court concluded that Boyle failed to state a claim for a violation of the FLSA because his "regular rate" did not violate the FLSA's minimum-wage requirement and he had alleged that he was paid for overtime based on his regular rate. The court further determined that Boyle's state-law claims were barred under Alabama's statutory notice requirement, Ala. Code § 11–47–23.

The City subsequently filed a motion for summary judgment, which the district court also granted. First, the court determined that Boyle's Rehabilitation Act claims failed because he did not offer a sufficient explanation for the inconsistencies between his current claims and his representations in his disability-retirement applications. Alternatively, Boyle could not establish that the City failed to provide him with a reasonable accommodation, given that he did not identify any reasonable accommodation that would have allowed him to perform the essential functions of the Heavy Equipment Operator position. Finally, the district court found that Boyle could not meet the standard for constructive discharge, and, in any event, he failed to show that the alleged constructive discharge occurred solely because of his disability. Accordingly, the court granted summary judgment in favor of the City. Boyle filed this timely appeal.

6

## II. DISCUSSION

### A. Dismissal of Boyle's FLSA claim

We review de novo a district court's order granting a motion to dismiss for failure to state a claim. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ray*, 836 F.3d at 1347–48 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is facially plausible when the plaintiff pleads sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1348.

Subject to exceptions not relevant here, the FLSA provides that an employer must pay its employee an overtime rate of at least one and one-half times the employee's "regular rate." 29 U.S.C. § 207(a)(1). An employee's regular rate is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S. Ct. 1242, 1245 (1945). "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Id.*

7

Boyle failed to plead facts sufficient on their face to state a plausible claim for a violation of the FLSA. *See Ray*, 836 F.3d at 1347–48. Assuming arguendo that Martin and Tipton had the authority to effectuate the 2005 agreement on the City's behalf, the agreement stated that Boyle would be paid at the Heavy Equipment Operator rate.[2] The fact that Martin later opined that Boyle should have been paid at a higher rate does not change the calculation of his regular rate for purposes of the FLSA, given that the parties agreed he would be paid at the Heavy Equipment Operator rate. *See Walling*, 325 U.S. at 424, 65 S. Ct. at 1245. Thus, Boyle's "regular rate" was $15.00 per hour—the rate at which he was actually paid. *See id.* He did not assert that he renegotiated his pay rate after the expiration of the two-year term specified in the 2005 agreement, nor did he allege that the City failed to compensate him for overtime hours based on the Heavy Equipment Operator rate. Accordingly, the district court did not err in dismissing Boyle's FLSA claim.

### B. Dismissal of Boyle's state-law claims

Section 11–47–23 of the Alabama Code provides:

> All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be

---

[2] Although the 2005 agreement and Martin's 2012 memorandum were not attached to Boyle's third amended complaint, the district court was permitted to consider them because they were central to his claims and neither party disputed their authenticity. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

Ala. Code § 11–47–23. Section 11–47–23 is a statute of nonclaim rather than a statute of limitations. *City of Birmingham v. Davis*, 613 So. 2d 1222, 1224 (Ala. 1992). "The whole theory of the statute is to create a defense broader in its operation than the statute of limitations, not only barring remedies, but extinguishing debts and liabilities." *Ivory v. Fitzpatrick*, 445 So. 2d 262, 264 (Ala. 1984) (emphasis omitted) (quoting *Fretwell v. McLemore*, 52 Ala. 124, 144 (1875)). The filing of a complaint within the specified period is sufficient to satisfy the requirements of section 11–47–23. *Marvin W. Sumlin Constr. Co. v. City of Prichard*, 465 So. 2d 371, 373 (Ala. 1985).

In *Hood v. City of Birmingham*, the plaintiff, as executrix of her husband's estate, sued the City of Birmingham for breach of contract based on its failure to pay legal fees to her husband for services he had performed for Roosevelt City, which had been annexed by the City of Birmingham. 562 So. 2d 164, 164 (Ala. 1990). Before Roosevelt City was annexed, it had entered into a written agreement with the plaintiff's husband, stating that it was "justly indebted to [the plaintiff's husband]" and that it "confess[ed] judgment in behalf of the City of Roosevelt City to [the plaintiff's husband]." *Id.* The Supreme Court of Alabama concluded that "[t]he 'claim' spoken of in [section] 11–47–23 does not include a contractual obligation known to and acknowledged by the city." *Id.* at 165. Because the

9

plaintiff's claim "was actually one for a debt (and not a claim contemplated by [section] 11–47–23) owed her husband by Roosevelt City," compliance with section 11–47–23 was not required. *Id.*

Here, the district court properly dismissed Boyle's state-law claims based on his failure to comply with section 11–47–23.[3] Because Boyle's claims center on the wages allegedly owed to him for his performance as a Foreman, his claims accrued, at the latest, in June 2012, when he was relieved of the Foreman duties. Boyle did not allege that he had ever presented his claims to the city clerk, and he filed his initial complaint in August 2014, more than two years after his claims accrued.

Furthermore, there is no evidence indicating that the City knew about and acknowledged a contractual obligation to Boyle for the difference between the Heavy Equipment Operator and Foreman pay rates. *See id.* The 2005 agreement reflects that Boyle would be paid at the Heavy Equipment Operator rate after he was transferred to the Foreman position and that this would be considered a "lateral move." While Martin, in his 2012 memorandum, opined that Boyle should have been paid at a higher rate after the expiration of the 2005 agreement, the memorandum does not constitute an acknowledgment by the City of a debt to

---

[3] Boyle has not argued on appeal or before the district court that a Rule 12(b)(6) motion is an inappropriate vehicle by which to assert a defense based on section 11–47–23. As such, we do not consider the issue.

Boyle.  Rather, the memorandum simply states Martin's opinion as to the pay that Boyle should have received.  Boyle has not pointed to any other documents reflecting an acknowledgment by the City of a contractual obligation, and there is no evidence that anyone authorized to act on behalf of the City acknowledged any debt to Boyle.[4]  *See id.*  Thus, the district court properly dismissed Boyle's state-law claims for failure to comply with section 11–47–23.

### C. Summary judgment as to Boyle's Rehabilitation Act claims

"We review a district court's grant of summary judgment *de novo*, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party."  *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).  Summary judgment is appropriate when the movant demonstrates that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.  *Id.*  Once the movant submits a properly supported motion for summary judgment, "the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial."  *Id.* (quoting *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010)).  If the nonmoving party presents evidence that is "'merely colorable' or 'not significantly probative,'"

---

[4] Ala. Code § 11–47–5 ("Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town by the officers authorized to make the same and by the party contracting.  In cases not otherwise directed by law or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town . . . .").

11

summary judgment is appropriate. *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)).

Section 504 of the Rehabilitation Act of 1973 prohibits entities receiving federal funds from discriminating against otherwise qualified individuals with disabilities. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1310 (11th Cir. 2007). To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that (1) he has a disability, (2) he is otherwise qualified for the position, and (3) he was subjected to unlawful discrimination as a result of his disability. *Id*.

A disability, for purposes of the Rehabilitation Act, is a physical or mental impairment that substantially limits one or more major life activities. *See* 29 U.S.C. § 705(9)(B) (cross-referencing 42 U.S.C. § 12102). A person with a disability is "otherwise qualified" if he is able to perform the essential functions of the job in question with or without a reasonable accommodation. *See Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 n.17, 107 S. Ct. 1123, 1131 n.17 (1987). "[T]he issue of whether an employee is an otherwise qualified individual and whether a reasonable accommodation can be made for that employee is determined by reference to a specific position." *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224–25 (11th Cir. 1997) (discussing reasonable accommodations and the

otherwise-qualified inquiry in the context of the Americans with Disabilities Act ("ADA")).[5]

An employer unlawfully discriminates against an otherwise qualified person with a disability when it fails to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the employer. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). The plaintiff bears the burden of identifying an accommodation and showing that the accommodation would allow him to perform the essential functions of the job in question. *Id.* at 1255–56.

The Rehabilitation Act does not require employers to create new positions for employees with disabilities. *Sutton v. Lader*, 185 F.3d 1203, 1210–11 (11th Cir. 1999) (stating that an employer "is under no obligation to hire an employee for a non-existent job," nor is it required to create a light-duty position for a disabled employee). "Reassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified." *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997). An employer is not required to promote the disabled employee or remove another employee from a position in order to accommodate the disabled employee. *Lucas*,

---

[5] "The standard for determining liability under the Rehabilitation Act is the same as that under the [ADA]; thus, cases involving the ADA are precedent for those involving the Rehabilitation Act." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted).

257 F.3d at 1256.  When an employer provides a greater accommodation than that required under the Rehabilitation Act, it "incurs no legal obligation to continue doing so."  *Id.* at 1257 n.3.

A plaintiff also may satisfy the third prong of a prima facie case of disability discrimination by showing that he suffered an adverse employment action, such as termination, because of his disability.  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).  Under the constructive-discharge doctrine, "an employee may be deemed to have been discharged where the terms or conditions of employment under which [he] is asked to work are so intolerable that a reasonable person in [his] position would have been compelled to resign."  *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1433–34 (11th Cir. 1997).  We employ an objective standard in determining whether an employee was constructively discharged; the employee's subjective feelings are not considered.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).

Although we are sympathetic to Boyle's situation, we cannot say that the district court erred in granting summary judgment in favor of the City as to his Rehabilitation Act claims.  Assuming arguendo that he satisfied the first two prongs of a prima facie case of discrimination under the Rehabilitation Act,

14

notwithstanding his representations in his applications for disability benefits,[6] he did not make a prima facie showing that the City unlawfully failed to accommodate him or that he suffered an adverse employment action.

As to his failure-to-accommodate claim, Boyle did not meet his burden of identifying a reasonable accommodation. *See Lucas*, 257 F.3d at 1255. Although the City allowed him to perform Foreman duties for several years, there is no evidence that the position, which was officially held by Crowe, was ever vacant during this time. The City was not required to reassign Boyle to a non-vacant position, nor was it obligated to create a second Foreman position or remove Crowe from the Foreman position in order to make a vacancy. *See id.* at 1256; *Sutton*, 185 F.3d at 1210–11; *Willis*, 108 F.3d at 284. Even if the Foreman position had been vacant, the City would not have been required to promote Boyle as an accommodation. *See Lucas*, 257 F.3d at 1256. The fact that the City accommodated Boyle for years by allowing him to perform Foreman duties does not indicate that it violated the Rehabilitation Act by removing this accommodation. *See id.* at 1257 n.3. While we can all applaud and appreciate the kindness of Martin and Crowe toward Boyle, the law simply does not require an

---

[6] To survive summary judgment, Boyle was required to explain why his representations in his disability-retirement applications were consistent with his current allegation that he could perform the essential functions of the job in question, at least with a reasonable accommodation. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798, 119 S. Ct. 1597, 1600 (1999). Because it makes no difference to the outcome of his appeal, we assume, without deciding, that Boyle sufficiently explained any inconsistencies between his current claims and the statements in his disability-retirement applications.

employer to demote or discharge an employee to accommodate another employee who is disabled.

Boyle also did not show that he was constructively discharged. Although he contended that Gossett assigned him to tasks he could not physically perform, thereby making his work conditions intolerable, the record reflects that he applied for disability-retirement benefits before Gossett became Superintendent. This evidence eviscerates his argument that he was constructively discharged. While Boyle testified that he decided to apply for disability-retirement benefits after hearing a rumor that he would be fired, the existence of an unverified rumor did not render his work environment "so intolerable that a reasonable person in [his] position would have been compelled to resign." *See Thomas*, 116 F.3d at 1434.

## III. CONCLUSION

The district court properly dismissed Boyle's FLSA and state-law claims, as he failed to state a claim for a violation of the FLSA and his state-law claims were barred by Alabama's statutory notice requirement. Additionally, the district court did not err in granting summary judgment as to Boyle's Rehabilitation Act claims, given that he failed to establish a prima facie case as to either claim. Accordingly, we affirm the district court's dismissal of Boyle's FLSA and state-law claims and its grant of summary judgment as to his Rehabilitation Act claims.

**AFFIRMED.**

16