[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-12410

Non-Argument Calendar

————————————————

AUDREY MALONE,

Plaintiff-Appellant,

*versus*

CITY OF ATLANTA, GEORGIA,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-05248-TCB

————————————————

Before JORDAN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Audrey Malone, proceeding *pro se*, appeals the district court's grant of summary judgment to the City of Atlanta, Georgia ("City") in her 42 U.S.C. § 1983 action, and its decision to assess costs against her. She argues that she established that the City had an official policy or custom which led to constitutional violations. Additionally, she argues that her case was not frivolous, and, therefore, there was no basis for assessing costs against her. After review, we affirm the district court's summary judgment decision. We dismiss Malone's appeal of the costs award for lack of jurisdiction.

## I.    Background

In 2019, Malone filed a *pro se* § 1983 action against the City, alleging that the City's failure to train its police officers resulted in a violation of her Fourth and Fourteenth Amendment rights, including an unconstitutional traffic stop, false arrest, false imprisonment, an unlawful seizure of the vehicle and personal items, and deliberate indifference to her serious medical needs. In support of her claim, she asserted that the City's policies and standard operating procedures ("SOP") regarding searches and seizures was unclear, and that the City had a practice of deploying poorly trained police officers.

Evidence produced during discovery established that, in 2017, former Atlanta Police Officer Matthew Williams pulled over Malone, a Lyft driver, and informed Malone that the license plate on the vehicle she was driving had been reported stolen. When Williams ran a check on Malone's driver's license, the search revealed that she had an outstanding warrant in Georgia for failure to appear. Malone denied ever receiving notice of the court date that resulted in the failure to appear warrant. Williams placed Malone under arrest, but after he handcuffed her, she began to show signs of medical distress. An ambulance was eventually called, Malone received treatment at Grady Memorial Hospital, and she was then transferred to the Fulton County Jail based on her outstanding warrant. The vehicle was impounded, and Malone's personal property seized.

Following the traffic stop and arrest, Malone filed a complaint with the Atlanta Citizen Review Board ("ACRB"), and the Atlanta Police Department's Office of Professional Standards ("OPS") opened an investigation into the traffic stop. OPS found inconsistencies in Williams's statements concerning what prompted him to stop Malone's vehicle as there were no hits on his cruiser's license plate reader for Malone's tag, and Williams did not run the tag until six minutes into the stop. Additionally, Williams failed to detect that, although Malone's tag number matched a stolen tag from North Carolina, her tag was issued by the state of Georgia, and was not stolen. OPS recommended that

Williams be dismissed, but he resigned after receiving the OPS recommendation.

The City moved for summary judgment, and Malone filed a cross-motion for partial summary judgment. In support of her motion for partial summary judgment, Malone submitted, in relevant part, 25 complaints from citizens to the ACRB alleging similar instances of false arrest, unlawful traffic stops, and failure to provide timely and adequate medical assistance by other APD officers between 2011 and 2018. She asserted that those complaints established that APD had an official policy or custom of deploying untrained police officers.[1]

The district court granted the City's motion for summary judgment, concluding, in relevant part that, even if Malone could show a deprivation of a constitutional right, she failed to show the City was on notice of any inadequate training policies or that the City acted with deliberate indifference. The district court denied Malone's motion for partial summary judgment. In the final judgment, the district court ordered "that the plaintiff take nothing; [and] that the defendant recover its costs of this action." However, the City has not yet filed a bill of costs in the district

---

[1] Several months after the City filed its response in opposition to Malone's motion for partial summary judgment, Malone filed a proposed amended motion for summary judgment. The district court ultimately denied this motion as moot.

21-12410                Opinion of the Court                5

court, and no formal taxation of costs has been entered against Malone.  This appeal followed.

## II.    Discussion

Malone argues that the district court erred in granting summary judgment because she demonstrated that the City failed to provide unambiguous and proper training policies on "the constitutional limitations on false imprisonment, false arrest, and when to call for medical [assistance]," and that the need for such training was obvious as evidenced by the 25 citizen complaints she submitted that were sustained by the ACRB.  Additionally, she argues that the district court erred in (1) denying as moot her motion to amend her motion for partial summary judgment and in not considering the new evidence she submitted with that motion,[2] and (2) failing to address her failure to call for medical attention claim.  Finally, she argues that the district court abused its discretion in assessing costs against her.[3]

_____

[2] The new evidence Malone submitted included new SOPs concerning traffic stops and arrests issued by APD in 2020 as a result of litigation in *Calhoun v. Pennington*, Case No. 1:09-cv-03286-TCB, Doc. 434 (N.D. Ga. 2018), which she maintains demonstrates the City's awareness of inadequate training.

[3] Federal Rule of Civil Procedure 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  We lack jurisdiction to review the award of costs because "[w]hile the district court has announced its intention to award costs to [the City], it has yet to fix the amount."  *Mekdeci ex rel. Mekdeci v. Merrel l Nat'l Lab'ys*, 711 F.2d 1510, 1523 (11th Cir. 1983).  Thus, the costs order is not final and appealable.  *Id.*;

We review the grant of summary judgment *de novo*, viewing the record and drawing all reasonable inferences in favor of the nonmoving party "to the extent supportable by the record." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (emphasis and quotation omitted). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (alteration adopted) (quotation omitted). "Once the movant submits a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. If the nonmoving party presents evidence that is merely colorable or not significantly probative, summary judgment is appropriate." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (quotations and internal citations omitted). "We may affirm for any reason supported by the record, even if not relied upon by the district court." *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1325 (11th Cir. 2020) (quotation omitted).

---

*see also Morillo-Cedron v. Dist. Dir. for the U.S. Citizenship & Immigr. Servs.*, 452 F.3d 1254, 1256 (11th Cir. 2006) (same). Accordingly, we dismiss Malone's claim as to this issue.

A municipality is liable under § 1983 if the plaintiff shows that: (1) her constitutional rights were violated; (2) the municipality had a custom or policy indicating deliberate indifference to the right; and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "[M]unicipal liability . . . may be based on a claim of inadequate training 'where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants such that the failure to train can be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (alteration adopted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). A "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original). Additionally, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quotation omitted). Thus, the failure to train must "reflect[] a 'deliberate' or 'conscious' choice by a municipality." *Canton*, 489 U.S. at 389. "To establish a 'deliberate or conscious choice' or such 'deliberate

indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation omitted). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability." *Id.* (quotation omitted).

However, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390–91. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391.

Malone asserted in her motion for partial summary judgment that the City "promulgat[ed] . . . an official policy or custom that deploys untrained police officers." She argued that the 25 ACRB complaints she submitted for incidents between

2011 and 2018, established that the City was on notice that its training in the areas of traffic stops, arrests, and obtaining medical attention was inadequate. These 25 sustained complaints by the ACRB were not sufficient to establish that APD had a policy or custom of undertraining its officers for purposes of § 1983 liability. *See Canton*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Malone has not explained why the City's training policies were inadequate. At best, these 25 incidents reflect isolated acts over an eight-year period by individual officers, which "says little about the training program or the legal basis for holding the city liable." *Id.* at 391; *see also Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) ("In resolving the issue of the City's liability, the focus must be on the adequacy of the training programs in relation to the tasks the particular officers must perform, and not merely on the training deficiencies for a particular officer." (quotation omitted)).

Moreover, even assuming those complaints could establish a pattern for purposes of § 1983 liability, Malone failed to present any evidence tending to demonstrate that the City "deliberate[ly] cho[se] not to take any action" when it became aware of issues with its training, as the record is devoid of information concerning what action the City took after receiving the ACRB

complaints.[4] *Gold*, 151 F.3d at 1350; *see also Am. Fed'n of Lab. & Cong. of Indus. Org. v. City of Miami, Fla.*, 637 F.3d 1178, 1189 (11th Cir. 2011) (holding summary judgment was appropriate where evidence may have put the City on notice of inadequate training but there was no evidence produced that the municipality made a choice not to take any action).

Accordingly, the district court properly entered summary judgment because Malone failed to provide sufficient evidence to create a genuine issue of fact concerning the City's § 1983 liability under a failure-to-train theory.

**AFFIRMED IN PART and DISMISSED IN PART.**

---

[4] Malone's proposed amended motion for summary judgment similarly did not demonstrate that the City was on notice of any alleged inadequacies in its training of officers or, assuming that it was on notice of issues with training, that it made a deliberate choice not to take any action. Accordingly, we cannot say that the district court abused its discretion in denying her motion to amend the motion for partial summary judgment as moot. Furthermore, to the extent that she sought to raise additional claims in her proposed amended motion, summary judgment briefs may not be used to amend a complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).