[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13200

_____

NICOLE OWENS,

Plaintiff-Appellant,

*versus*

STATE OF GEORGIA, GOVERNOR'S OFFICE OF STUDENT
ACHIEVEMENT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-05683-MHC

_____

Before LUCK, BRASHER, and HULL, Circuit Judges.

BRASHER, Circuit Judge:

This appeal requires us to answer a question of first impression about the Rehabilitation Act. We have held that, to trigger an employer's duty to provide an accommodation under the Rehabilitation Act, a disabled employee must (1) make a specific demand for an accommodation and (2) demonstrate that such an accommodation is reasonable. *Frazier-White v. Gee*, 818 F.3d 1249, 1255–56 (11th Cir. 2016). But we have never addressed what information a disabled employee must provide to her employer to trigger the employer's duty to accommodate her disability.

This appeal presents that question. Following her c-section childbirth in July 2018, Nicole Owens informed her employer, the State of Georgia, Governor's Office of Student Achievement ("GOSA"), that she would need to work remotely for several months. In support of this request, Owens provided GOSA two notes from her physician, which mentioned Owens's c-section delivery, stated that she was "doing well," and concluded that she "may" telework until November 2018. Owens separately informed GOSA that she was seeking to telework due to childbirth-related "complications" but provided no detail about the nature of these complications or how they would be accommodated by teleworking. Finding this information insufficient to support Owens's accommodation request, GOSA asked Owens to either

submit additional documentation or return to the office. When Owens failed to do either, GOSA terminated her employment.

Owens sued GOSA for (1) failure to accommodate in violation of the Rehabilitation Act; (2) retaliation in violation of the Rehabilitation Act; and (3) pregnancy discrimination under the Pregnancy Discrimination Act. The district court granted summary judgment for GOSA on all three claims. As to the first claim, the district court reasoned that Owens failed to establish a prima facie case of failure to accommodate because she never notified GOSA of her disability or connected that disability with her requested accommodation. As to the other claims, the district court concluded that Owens failed to establish that GOSA's proffered reasons for terminating her were pretext for discrimination.

We agree with the district court. We hold that, as part of her initial burden to establish that a requested accommodation is reasonable under the Rehabilitation Act, an employee must put her employer on notice of the disability for which she seeks an accommodation and provide enough information to allow her employer to understand how the accommodation she requests would assist her. Because Owens did not identify any disability from which she suffered or give GOSA any information about how her requested accommodation—teleworking—would accommodate that disability, the district court correctly granted summary judgment. We conclude that Owens's other claims fail for the lack of evidence that GOSA's proffered reasons for

terminating her were pretext for discrimination. Accordingly, we affirm.

## I.

Nicole Owens began working for GOSA in 2016 as a web content specialist and served in this role without reprimand until her termination in 2018. Although GOSA employees were allowed to work from home one day per week, Dr. Cayanna Good—GOSA's Executive Director—did not favor full-time teleworking because she believed it impeded effective staff supervision and support. As Executive Director, Good was GOSA's ultimate decisionmaker for both accommodation requests and firing of GOSA staff.

In early 2018, Owens informed GOSA that she had a "high-risk pregnancy" and wanted to take time off under the Family Medical Leave Act ("FMLA") until her due date. GOSA sent Owens a letter approving her FMLA request. The approval letter stated GOSA's policy that an employee taking FMLA leave is "required to present a medical release before returning to work" containing "any restrictions and the duration of same." But the policy does not specify whether "returning to work" meant returning to the physical office. Owens was on FMLA paid leave from early 2018 until July 20, 2018.

Owens gave birth via c-section on July 18, 2018. Thereafter, Owens notified her immediate supervisor, Rosaline Tio, that she

was experiencing childbirth-related complications arising from her c-section, which required two blood transfusions.

On August 3, 2018, Tio informed Owens that Owens had exhausted her paid FMLA leave and was being placed on unpaid leave as of July 20, 2018. Owens responded that same day, informing GOSA that she would return to work remotely on August 6, 2018. She attached a note from her physician, which stated that Owens "delivered a baby by cesarean on 7/18/2018," "is doing well," and "may return to work via tele-work from her home."

Good believed this note qualified as a "medical release" for Owens to "return to work" under GOSA's FMLA policy. Owens, too, admits that this note cleared her to return to work, though only in a remote capacity.

Good was unaware at the time of this initial telework request that Owens was experiencing any medical complications that would prevent her from working in the office. Nonetheless, because she knew that "most childcare facilities don't accept infants younger than six weeks," Good allowed Owens to telework temporarily so that Owens could make childcare arrangements. Because Good believed that Owens's August 3 telework request was unrelated to any health complications, Good did not require Owens to provide additional medical documentation before approving her temporary teleworking arrangement. Owens thus resumed work remotely on August 6, 2018. The parties agree that, at that time, Owens was no longer on FMLA leave.

Owens routinely communicated with Tio about her post-delivery medical appointments. Knowing Owens had her six-week "milestone appointment" scheduled for September 11, 2018, Tio wrote Owens on September 12, asking how the appointment went. Owens responded that, because of complications from her c-section delivery, she would need to continue teleworking until November 5, 2018. Owens attached a second doctor's note dated 9/11/2018, which stated only that Owens "may return to work November 5, 2018" and "may continue to telework at home until then." The note said nothing about Owens's medical conditions or the medical necessity of teleworking.

Tio forwarded this information to Good and Felicia Lowe, a Human Resources Director in the Office of Planning and Budget, which carried out GOSA's human resources functions. Because Owens's second doctor's note stated only that Owens "may" telework, not that she "must," Good believed it was ambiguous and lacked enough information for her to evaluate Owens's accommodation request. Because Tio had expressed concerns with Owens's productivity and responsiveness while teleworking, Good found it important to ensure that Owens's teleworking accommodation was necessary, not merely her own personal preference.

At Good's direction, Lowe called Owens and told her that she needed to submit additional documentation to show her telework request was medically necessary. Owens followed up with Lowe that same day after speaking with her doctor's nurse.

She told Lowe that if GOSA required more detail than "just an appendage" to the September 11 note stating its contents were "medically advised," GOSA would need to provide the doctor's office with an information request form.

Accordingly, on September 20, 2018, Lowe sent Owens reasonable accommodation paperwork for her and her physician to complete. The accommodation paperwork asked for information verifying Owens's disability and the limitations caused by that disability, describing how those limitations restrict Owens's ability to perform her job functions, and identifying any workplace accommodations that would permit Owens to perform these job functions. Included with the reasonable accommodation paperwork was an "Employee Release" for Owens to sign that would authorize GOSA to acquire medical information from Owens's doctor directly. There is no evidence that Owens ever completed or returned this release to GOSA.

On September 24, 2018, Owens forwarded the reasonable accommodation paperwork to her doctor's records and release department for completion. Owens knew it could take the records department up to twenty days to fulfill such requests, but she never informed GOSA of this timeline.

Although GOSA did not initially provide Owens a deadline for returning the completed paperwork, Lowe contacted Owens on October 1 and told her that if she did not either submit the documentation to GOSA by the next day, October 2, or return to

the office on October 3, "business decisions would need to be made."

Owens emailed Lowe on October 2, stating that she had not received the completed paperwork from her doctor and would be unable to return to the office the next day. Owens wrote that she had called her doctor's office "numerous times" trying to expedite the paperwork and had "notified everyone that the process to get paperwork signed by the office typically takes time" but that she could not "expedite internal processes out of [her] control."

Lowe shared this email with Good, who decided to give Owens another week to submit her paperwork or return to the office. Lowe informed Owens of this extension and sent her "an official and final request" for "details to assist in determining the continued allowability of teleworking." This final request memorandum informed Owens that "[f]ailure to provide the completed reasonable accommodation documentation" by October 10, 2018, or "to return to the worksite" by October 11, 2018, "may result in termination of your employment."

Owens called her doctor's office daily trying to expedite her paperwork request and informed GOSA of these efforts. In the meantime, Good and Tio began outlining a proposed teleworking plan for Owens, should her reasonable accommodation paperwork reveal that teleworking was a reasonable accommodation for her disability. And Tio had arranged to discuss this new teleworking protocol with Owens on October 10.

On the evening of October 10, after hearing no word from Owens about her paperwork or whether she planned to return to the office the next day, Tio sent Good a memorandum summarizing Tio's interactions with Owens related to her accommodation request. Tio also emailed Owens to ask if she would be coming into the office the next day. Owens did not respond. Instead, on October 11, Owens emailed Lowe, stating that she had not obtained her paperwork from her doctor and would not be returning to the office that day. Later that morning, Good fired Owens for failing to return her medical documentation or return to the office as instructed.

Based on these events, Owens sued GOSA alleging failure to accommodate and retaliation, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and discrimination, in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). The district court granted summary judgment for GOSA on all three claims.

The court reasoned that Owens never triggered GOSA's accommodation obligations under the Rehabilitation Act because the information neither identified a specific disability nor explained how telework would accommodate it. And, even if Owens triggered GOSA's accommodation duties, the court determined that her accommodation claim still failed because she caused a "breakdown" in the "interactive process" between her and GOSA. The district court also reasoned that, even if Owens established a prima facie case of retaliation under the Rehabilitation Act and

discrimination under the Pregnancy Discrimination Act, both those claims failed because she did not show that GOSA's stated reasons for firing her were pretext for discrimination. The district court entered final judgment in GOSA's favor. Owens timely appealed.

## II.

We review an appeal from summary judgment *de novo*. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1310 (11th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). Although we must view the evidence in the light most favorable to the nonmoving party, drawing "all justifiable inferences" in that party's favor, "inferences based upon speculation" are not justifiable. *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) (quotations omitted). Thus, where "the nonmoving party presents evidence that is 'merely colorable or not significantly probative,'" the movant is entitled to judgment as a matter of law. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (quoting *Stephens v. Mid–Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014)).

### III.

*A.*

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), prohibits covered employers from discriminating against employees based on their disabilities. *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999). In employment discrimination cases, the standards for determining whether an employer violates the Rehabilitation Act "shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210)" relating to employment. 29 U.S.C. § 794(d). "[T]hus, cases involving the ADA are precedent for those involving the Rehabilitation Act." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000)).

"To establish a prima facie case of discrimination under the [Rehabilitation] Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." *Sutton*, 185 F.3d at 1207–08 (citations omitted). Unlawful discrimination under the Rehabilitation Act includes failing to provide reasonable accommodations for employees' known disabilities. *Boyle*, 866 F.3d at 1289 (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)).

The Rehabilitation Act does not require employers to speculate about their employees' accommodation needs. Instead, we have held that to trigger an employer's duty to provide a reasonable accommodation, the employee must (1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable. *Frazier-White*, 818 F.3d at 1255–56; *see Willis v. Conopco, Inc.*, 108 F.3d 282, 284–86 (11th Cir. 1997). Only after the employee provides this information must the employer "initiate an informal, interactive process" with the employee to discuss the employee's specific limitations, explore potential accommodations, and select the most appropriate accommodation for both the employer and the employee. *See* 29 C.F.R. § 1630.2(o)(3); *see also D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)), *cert. denied*, 141 S. Ct. 1435 (2021); *Willis*, 108 F.3d at 284–86.

Owens argues that she triggered GOSA's accommodation duties when she informed GOSA that she was requesting a teleworking accommodation for childbirth-related complications. We disagree. By informing GOSA of her need to telework following her childbirth, Owens made a specific demand for an accommodation in satisfaction of the first part of our failure-to-accommodate test. But the second part of our test—demonstrating that the requested accommodation is reasonable—requires that an employee put her employer on notice of the disability for which

she seeks an accommodation and provide enough information to allow an employer to understand how the accommodation would address the limitations her disability presents. Because Owens did neither, we conclude that Owens did not demonstrate that her requested accommodation was reasonable.

1.

We have not specifically addressed how an employee who makes a demand for an accommodation can meet her obligation to demonstrate that her requested accommodation is reasonable. But we believe that an employee must do at least two things: identify her disability and suggest how the accommodation will overcome her physical or mental limitations.

First, our caselaw and the statutory text establish that an employee must identify her disability before an employer is obligated to engage in an interactive process about accommodating that disability. We have held that a plaintiff cannot sustain a prima facie case of disability discrimination without proof that her employer knew of her disability. *Morisky v. Broward Cnty.*, 80 F.3d 445, 448 (11th Cir. 1996). Our requirement that disabled employees notify their employers of their disability flows from the Rehabilitation Act's text, which imposes a duty on employers to accommodate only disabilities that are "known" to them. 42 U.S.C. § 12112(b)(5)(A); *see* 29 U.S.C. § 794(d) (incorporating § 12112); *see also* 29 C.F.R. § Pt. 1630, App. § 1630.9 ("[A]n employer would not be expected to accommodate disabilities of which it is unaware."). It is "evident that an employee

cannot be fired 'because of' a disability" in violation of the statute "unless the decisionmaker has *actual* knowledge of the disability." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185 (11th Cir. 2005).

In most cases, to identify a disability, an employee must provide at least some information about how a physical or mental condition limits her functioning. The statutory text defines a disability as a physical or mental impairment that limits a major life activity, such as "performing manual tasks, . . . lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(a), (2)(a) (defining disability under the ADA). Consistent with that definition, the statute requires employers "to make reasonable accommodation only to the *physical or mental limitations*" caused by the employee's physical or mental condition. 29 C.F.R. § Pt. 1630, App. § 1630.9 (emphasis added). Accordingly, to put her employer on notice of her disability, an employee must identify—at least in broad strokes—the limitations her mental or physical condition imposes.

Second, we believe an employee must provide her employer enough information to assess how her proposed accommodation would help her overcome her disability's limitations. We have held that "[a]n accommodation can qualify as 'reasonable' . . . only of it enables the employee to perform the essential functions of the job." *Lucas*, 257 F.3d at 1255–56 (citing *LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832, 835 (11th Cir. 1998)). The same accommodation might be appropriate for one disability and

21-13200                Opinion of the Court                15

inappropriate for another, and the same disability may require different accommodations for different employees. *See Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014) ("Few disabilities are amenable to one-size-fits-all accommodations."). Accordingly, an employee must link her disability to her requested accommodation by explaining how the requested accommodation could alleviate the workplace challenges posed by her specific disability.

The bottom line is that employees must give employers enough information to respond effectively to an accommodation request. We have made clear that "an employer is not required to accommodate an employee in *any* manner that the employee desires—or even provide that employee's preferred accommodation." *D'Onofrio*, 964 F.3d at 1022, *cert. denied*, 141 S. Ct. 1435 (2021). Therefore, when an employee triggers an employer's accommodation duties, the employer must expend time and expense to explore the universe of reasonable accommodations, identify one that is mutually agreeable to the parties, and implement it. To begin this interactive process, "an employer needs information about the nature of the individual's disability and the desired accommodation." *Ward*, 762 F.3d at 31.

The type and extent of information that an employee must provide will depend, of course, on the particulars of each case. The link between the disability and the requested accommodation may often be obvious. "[A]n employee confined to a wheelchair," for instance, "would hardly need a doctor's report to show that she needed help in getting to her workstation if this were accessible

21-13200                Opinion of the Court                16

only by climbing a steep staircase." *Id.* at 32 (quoting *Langon v. Dep't of Health & Human Servs.*, 959 F.2d 1053, 1058 (D.C. Cir. 1992)). But in other circumstances, the link between a person's limitations and the requested accommodation will be unclear without additional information. Because this information is "typically possessed only by the individual or her physician," *id.*, it is reasonable that the employee inform her employer how the accommodation she seeks will address her limitations before requiring the employer to initiate the interactive process.

Even so, we expect an employee's informational burden to be modest. Although "[v]ague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice" of its accommodation duties, *Morisky*, 80 F.3d at 448, an employee is not required to provide her employer with detailed or private information about her disability to initiate the employer's duty to engage in an interactive assessment about the need for an accommodation. We recognize that "[d]isabled employees . . . may have good reasons for not wanting to reveal unnecessarily every detail of their medical records because much of the information may be irrelevant to identifying and justifying accommodations, could be embarrassing, and might actually exacerbate workplace prejudice." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315 (3d Cir. 1999). Rather, to trigger an employer's accommodation duties, a disabled employee need only identify a statutory disability and explain generally how a particular accommodation would assist her.

2.

Owens argues that she sufficiently notified GOSA of her disability and linked that disability to her telework request. She points to her doctor's statement that she had delivered a child by c-section and may work remotely until November and her statement that she experienced "childbirth-related complications," requiring "two blood transfusions." We disagree that this information was sufficient.

Courts and regulators have recognized that neither childbirth nor pregnancy qualifies as a disability under the statute. *See* 29 C.F.R. pt. 1630, App. § 1630.2(h) ("Other conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments."); *Farrell v. Time Serv., Inc.*, 178 F. Supp. 2d 1295, 1298 (N.D. Ga. 2001) ("It is clearly established that pregnancy *per se* does not constitute a disability under federal law.") (collecting cases). "Disability" is a statutory term, which the Rehabilitation Act defines as "a physical or mental impairment that substantially limits one or more major life activities." *Boyle*, 866 F.3d at 1288 (quoting 29 U.S.C. § 705(9)(B) (incorporating 42 U.S.C. § 12102)). To be sure, a pregnancy- or childbirth-related impairment may qualify as a disability, but only if that impairment substantially limits a major life activity. 29 C.F.R. pt. 1630, App. § 1630.2(h). But the conditions themselves are not disabilities.

Although Owens's unspecified "childbirth-related complications" may have caused a disability, Owens never identified what that disability was. She points to her c-section and

blood transfusions as information identifying a disability, but these are medical procedures and treatments, not disabilities. *See cesarean section*, MERRIAM-WEBSTER'S MEDICAL DICTIONARY (2016) ("a surgical procedure . . . for delivery of offspring"); *blood transfusion*, MERRIAM-WEBSTER'S MEDICAL DICTIONARY (2016) ("a medical treatment in which someone's blood is put into the body of another person"). As with childbirth-related complications, such procedures or treatments may cause a disability, but Owens failed to identify any such disability in her communications with GOSA.[1] There is no obvious limitation on functioning that arises from having had a c-section or a blood transfusion five or six weeks earlier.

Having failed to identify a disability, Owens also failed to explain to GOSA why teleworking would accommodate her disability. Although her doctor's recommendation that she telework qualifies as a demand for a specific accommodation, it does not explain how that accommodation would alleviate any physical or mental limitation.

---

[1] By way of comparison, the Equal Employment Opportunity Commission's enforcement guidance identifies several specific pregnancy-related impairments that it says could be sufficiently severe to substantially limit a person's functions. U.S. Equal Emp. Opportunity Comm'n, EEOC-NVTA-2015-2, Questions and Answers about the EEOC's Enforcement Guidance on Pregnancy Discrimination and Related Issues (June 25, 2015), https://www.eeoc.gov/laws/guidance/questions-and-answers-about-eeocs-enforcement-guidance-pregnancy-discrimination-and (all internet materials as visited Sept. 27, 2022, and available in Clerk of Court's case file).

Viewed in its entirety, and in the light most favorable to Owens, the information Owens provided GOSA amounts to nothing but "[v]ague or conclusory statements revealing an unspecified incapacity." *Morisky*, 80 F.3d at 448. Because such information is not enough to trigger an employer's duties under the Rehabilitation Act, Owens's claim that GOSA discriminated against her by failing to provide her reasonable accommodations fails as a matter of law. Accordingly, we need not decide whether her claim fails on the ground that she caused a breakdown in the interactive process. *Cf. Lucas*, 257 F.3d at 1256.

## B.

Owens also maintains that the district court erred when it granted GOSA summary judgment on Owens's retaliation and pregnancy discrimination claims on the ground that she failed to show pretext. We disagree.

In addition to imposing liability for failing to provide reasonable accommodations, the Rehabilitation Act also prohibits retaliating against an employee for engaging in protected activity. 29 U.S.C.§ 794(a). Further, Title VII, as amended by the Pregnancy Discrimination Act, prohibits discrimination based on pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k) (amending 42 U.S.C. § 2000e-2). Because both claims are governed by the same legal framework, *see Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998); *Ellis*, 432 F.3d at 1326 (citing *Cash*, 231 F.3d at 1305 n.2), we address them together.

21-13200                Opinion of the Court                20

Where, as here, a plaintiff claims discrimination or retaliation based on circumstantial evidence, we ordinarily apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)); *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021) (citing *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)).

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case. *Alvarez*, 610 F.3d at 1264 (citing *Wilson*, 376 F.3d at 1087); *Tolar*, 997 F.3d at 1294 (citing *Johnson*, 948 F.3d at 1325). If the plaintiff satisfies this burden, the burden of production then shifts to her employer to articulate a legitimate, nondiscriminatory reason for its actions. *Alvarez*, 610 F.3d at 1264 (citing *Wilson*, 376 F.3d at 1087); *Tolar*, 997 F.3d at 1294 (citing *Johnson*, 948 F.3d at 1325). If the employer proffers even one such reason, the burden then shifts back to the plaintiff, who must show that the reason given by the employer

[2] Alternatively, we have said that, even if a plaintiff fails to satisfy her burden under the *McDonnell Douglas* framework, she may still defeat summary judgment by presenting "a convincing mosaic" of circumstantial evidence that "raises a reasonable inference that the employer discriminated" against her. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); *see also Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (describing types of relevant circumstantial evidence under *Smith*). Owens does not argue that she satisfies this alternative framework on appeal.

was a mere pretext for discrimination. *Alvarez*, 610 F.3d at 1264 (citing *Wilson*, 376 F.3d at 1087); *Tolar*, 997 F.3d at 1294 (citing *Johnson*, 948 F.3d at 1325). "Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013).

To establish pretext and avoid summary judgment, the plaintiff "must present 'significant probative' evidence," *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (citations removed), "sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment action," *Sims*, 704 F.3d at 1332 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). This evidence must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Our review on this issue is limited. We "do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir. 1988)). Nor may we analyze whether an employer's proffered reasons "are prudent or fair," *Damon v.*

*Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999), or find pretext "by simply quarreling with the wisdom of th[ose] reason[s]," *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1314 (11th Cir. 2016) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). We have made clear that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir.1984). If the evidence shows that the "employer[] w[as] dissatisfied with [the plaintiff] for . . . non-discriminatory reasons, even if mistakenly or unfairly so," the employer is entitled to summary judgment. *Alvarez*, 610 F.3d at 1266 (citing *Elrod*, 939 F.2d at 1470).

Here, even assuming Owens established a prima facie case of retaliation and pregnancy discrimination, both claims still fail because Owens has not shown that GOSA's legitimate, non-retaliatory reasons for firing her—failing to return her reasonable accommodation paperwork or return to the office as requested—were pretextual.

Owens argues that GOSA's first reason—Owens's failure to submit her reasonable accommodation paperwork by GOSA's deadline—was pretextual because Owens made every effort to expedite her doctor's paperwork process (a process outside of her control); GOSA knew of these efforts; and, in any event, GOSA did not need this information to make an informed decision about Owens's accommodation request. We disagree. The undisputed

evidence negates any inference that GOSA's request for additional information, or its choice to fire Owens after she failed to abide by that request, were motivated by illegal discrimination.

We already concluded that Owens failed to provide GOSA with sufficient information to allow it to adequately assess Owens's accommodation request. GOSA was therefore within its right to request additional information from Owens before deciding whether to approve her teleworking accommodation.

The evidence also demonstrates GOSA's genuine interest in obtaining this information and establishes that GOSA was prepared to approve Owens's accommodation request upon its receipt. Not only did GOSA extend Owens's deadline for submitting her paperwork, but GOSA had already begun preparing a teleworking plan for Owens in anticipation of receiving it.

This evidence establishes that GOSA fired Owens, not for any discriminatory reason, but rather because Owens kept GOSA in the dark as to when it could expect to receive Owens's paperwork or what that paperwork would reveal about her medical condition. Owens never communicated with GOSA directly about how telework would reasonably accommodate any childbirth-related disability. She also failed to submit GOSA's medical release, which would have authorized GOSA to contact Owens's doctor directly. Finally, she neglected to share with GOSA that her doctor had a 20-day turnaround for paperwork requests. An employer is not required to wait indefinitely for necessary

information supporting an accommodation request. A reasonable jury could not find pretext here.

Next, Owens argues that GOSA's second proffered reason for firing her—failing to return to the office after several warnings—was also pretextual because it was implausible, incoherent, and inconsistent, given GOSA's own policy required employees on FMLA leave to submit a medical release before returning to work. Owens argues that, under this policy, she was not permitted to return to work, as her doctor cleared her to work only remotely. Because we conclude that GOSA's first reason for firing Owens was not pretextual, Owens's retaliation and pregnancy discrimination claims fail as a matter of law even if she is correct that GOSA's second reason is suspect. *Wascura v. City of South Miami*, 257 F.3d 1238, 1243 (11th Cir. 2001) (explaining that employer is entitled to summary judgment unless the employee establishes that "each of the [employer's] proffered reasons is pretextual").

In any event, we disagree that this second reason for firing Owens was pretextual. GOSA's FMLA policy did not require an employee to be released to return to the physical office; it required only that she be released "to return to work." The parties agree that Owens's August 3 doctor's note released her to return to work in a remote capacity, and that Owens was no longer on FMLA leave once she began teleworking on August 6. And by requiring that an employee's medical release specify any "restrictions" on an that employee's return, GOSA's FMLA policy contemplates the

possibility of "returning to work" in a limited capacity, such as remotely. Owens was thus free to return to work under GOSA's medical release policy.

And no matter what we believe the policy requires, the evidence that *Good believed* Owens was medically released to return to work under the policy forecloses Owens's pretext argument. The pretext analysis centers on the employer's subjective beliefs; "the employee's beliefs" or even "reality as it exists outside of the decision maker's head" is irrelevant. *Alvarez*, 610 F.3d at 1266 (citing *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997)); *see also Elrod*, 939 F.2d at 1470. And Good's belief that Owens had been medically released to return to work is entirely consistent with her decision to fire Owens for failing to return to the office.

Because the evidence shows Good was "dissatisfied" with Owens "for . . . non-discriminatory reasons, even if mistakenly or unfairly so," Owens has not shown pretext, and both her retaliation and pregnancy discrimination claims fail as a matter of law. *See Alvarez*, 610 F.3d at 1266 (citing *Elrod*, 939 F.2d at 1470).

## IV.

For these reasons, the district court is **AFFIRMED**.