[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13383

_____

ARMANDO BANEGAS GUEVARA,
and all others similarly situated under
29 U.S.C. § 216(b),

                                        Plaintiff-Appellant,

*versus*

LAFISE CORP.,
a corporation,
ROBERT ZAMORA, SR.,
an individual,
MARIA J. ZAMORA,
an individual,
LATIN AMERICAN FINANCIAL SERVICES, INC.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23658-AHS

_____

Before JORDAN, BRASHER, and ABUDU, Circuit Judges.

ABUDU, Circuit Judge:

Armando Guevara appeals the district court's grant of summary judgment in favor of his former employers Robert and Maria Zamora and their businesses Lafise Corporation ("Lafise") and Latin American Financial Services, Inc. ("LAFS") in an action he brought against them for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). After a thorough review of the record and the parties' briefs, and with the benefit of oral argument, we reverse in part and vacate in part the district court's grant of summary judgment.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Guevara worked for the Zamoras as a domestic service employee for over a decade. He performed various services in their Miami home, such as cleaning the terrace, shining their boat, washing their cars, dropping and picking them up from the airport, and

going grocery shopping.  He also did maintenance work for the Zamoras' family members.

The Zamoras own Lafise and LAFS—conglomerates that operate financial institutions across Latin America.[1]  Occasionally, Guevara provided services for Lafise, which included painting its office space, distributing brochures, and delivering documents. Additionally, Guevara communicated with Lafise employees often, and Lafise and LAFS prepared and issued the semi-monthly paychecks he received for all work he performed.

Guevara and the Zamoras did not have a written employment agreement detailing his responsibilities, but they did have a verbal understanding regarding the duties he was expected to perform.  Pursuant to their oral agreement, the Zamoras paid Guevara $1,365.88 on a biweekly basis, and Guevara worked at least 57 hours a week.  The parties could not agree on whether the $1,365 represented a salary or an hourly wage.  Consequently, Guevara and the Zamoras presented different base and overtime rate numbers and theories to support their respective positions.

Robert Zamora testified that he and his wife paid Guevara an hourly rate of "$9.46 more or less" and an overtime rate of $15. Maria Zamora, on the other hand, testified she thought Guevara's hourly rate was $9.60 with an overtime rate of $15.  The Zamoras admitted that, prior to Guevara's lawsuit, they did not keep records

---

[1]  Guevara asserts that LAFS and Lafise are the same entity, but the Zamoras claim that although the two are affiliated, they are separate companies.

breaking down the number of hours Guevara worked each week or his exact hourly or overtime rates. Guevara's semi-monthly paystubs also did not reflect his hourly rate or the number of hours he worked each week. The "Description" section of his paystub did, however, say "Salary."

Nevertheless, the Zamoras paid Guevara the same weekly amount—$682.94—irrespective of whether he was absent, worked less than 57 hours, or worked more. Only after Guevara filed suit did the Zamoras state that Guevara's hourly rate was $9.62 for 40 hours of work each week with an overtime rate of $14.43 for the 17 hours of work he performed beyond the 40. The Zamoras pointed to handwritten notes as the only thing in writing that set forth an overtime hourly rate. Moreover, from late August 2020 until Guevara quit in March 2021, the Zamoras reduced his weekly pay amount to $384.80 to reflect an hourly rate of $9.62 for 40 hours a week.

Guevara testified during his deposition, and reiterated in his Statement of Material Facts, that he understood his pre-August 2020 bi-weekly paychecks of $1,365.88 to represent a regular salary, with his base hourly rate being $11.68. Guevara further testified that he was not paid an overtime hourly rate, but rather his hourly pay was "around $11." The Zamoras proffered a set of notes, hand-written by Maria Zamora, that showed they paid Guevara $15 an hour for time he worked above 57 hours a week during the first half of 2018.

Although Guevara conceded Maria Zamora's notes stated as such, he denied that he expected to be paid $15 an hour for any overtime worked within his 57-hour workweek, and he denied that *he* ever wrote a $15 hourly overtime rate on those notes. That said, the Zamoras also proffered notes handwritten by Guevara that show a week in December of 2019 where he worked 16.5 hours over his 57-hour workweek and was owed $585 for this time. This would calculate to a rate of $14.81 an hour. However, Guevara denied the Zamoras' assertion that this note indicated that he was calculating an overtime rate of $15 an hour because he did not write that rate anywhere on that note. Guevara reiterated in his testimony that his overtime rate was not $15. Overall, Guevara maintained that he was paid a salary and not by the hour, and that he was paid the same regardless of the actual hours worked.

In September 2020, Guevara filed a putative class action against the Zamoras, Lafise, and LAFS alleging they underpaid him for his overtime work. After a failed mediation, the parties moved for summary judgment.

In its first opinion and order, the district court ruled that Guevara was not covered by the FLSA through either "enterprise coverage" or "individual coverage." It held Guevara was not covered under "enterprise coverage" based on its finding that Guevara never worked for Lafise, and it determined that his job duties did not support "individual coverage" under the FLSA. The court further found that, even if he could raise an FLSA claim, the record supported the Zamoras' contention that Guevara was fully

compensated for all his overtime work hours.  The court adopted the Zamoras' testimony that they generally paid Guevara $9.62 an hour with an overtime rate of $14.43 an hour.[2]  Based on that calculation, the court found that the Zamoras paid Guevara "all regular and overtime hours worked."

Guevara filed a "Motion for Clarification and/or Reconsideration," which the district court granted in part and denied in part. It first ruled that Guevara indeed did qualify under the FLSA's "individual coverage" as a "domestic service employee" under 29 C.F.R. § 552.99.  However, it never addressed whether Lafise was a "joint employer."  Even so, the court still rejected Guevara's FLSA claim.  It relied on the hourly pay calculations from its first order, specifically discounted Guevara's deposition testimony as "inherently self-interested," and found his testimony contradicted his handwritten notes.  Viewing the legal question of how much weight to accord Guevara's testimony as a matter of first impression, the district court held: "[W]here the only evidence in support of a plaintiff's claim is the plaintiff's own sworn statements (affidavit or deposition testimony), which are undermined by the plaintiff's prior writings, the plaintiff cannot survive summary judgment."  Guevara timely appealed.

---

[2] Calculating Guevara's pay at these rates, however, leads to inaccurate results—$9.62 per hour for the first 40 hours worked, and $14.43 per hour for the remaining 17 hours, results in $630.11 of pay per week.  However, per Guevara's pay stubs, he was paid $682.94 a week.  Even using the "rounded-up" rate of $15 an hour for overtime, the calculations result in $639.80 of pay per week, still short of the actual amount paid to Guevara.

## II. STANDARDS OF REVIEW

We review the district court's grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the non-moving party. *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999). Summary judgment is appropriate when no genuine dispute of material fact exists and a party is entitled to judgment as a matter of law. *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023). A dispute of fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022).

We review the district court's partial denial of a motion for reconsideration for an abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001). However, if the district court's ruling turns on a question of law, we review that decision *de novo*. *See E.E.O.C. v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016).

## III. DISCUSSION

On appeal, Guevara argues that genuine questions of material fact exist as to: (1) whether the Zamoras paid him a salary or hourly wage; (2) what his actual hourly wage was, which directly determines what his overtime pay should have been; and based on

those calculations, (3) whether he received all his overtime pay as the FLSA requires. He also argues that we should reverse the district court's decision that Lafise was not a "joint employer."

### A. FLSA claim under "Individual Coverage"

The FLSA mandates "that an employee who is engaged in interstate commerce must be paid a wage of time and a half his regular rate for each hour that he works in excess of forty hours per week." *Collar v. Abalux, Inc.*, 895 F.3d 1278, 1281 (11th Cir. 2018) (citing 29 U.S.C. § 207(a)(1)). To be eligible for overtime compensation under the FLSA, "an employee must first demonstrate that he is 'covered' by the FLSA" through "individual coverage" or "enterprise coverage." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). An employee can claim "individual coverage" if he "directly participat[es] in the actual movement of persons or things in interstate commerce . . . ." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). Domestic service employees are covered under "individual coverage," and thus eligible for overtime compensation. *See* 29 C.F.R. § 552.99.

"[A]n employee's 'regular rate' is the 'keystone' of the FLSA's overtime provisions." *Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)). The FLSA computes a salaried employee's regular rate by "dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a); *See Bay Ridge Operating Co. v. Aaron*, 334 U.S.

446, 461 (1948) ("Wage divided by hours equals regular rate." (citation omitted)).  The FLSA then calculates an employee's overtime rate by multiplying the regular rate by "one and one-half." 29 C.F.R. § 778.113(a).

Because an employee's overtime rate depends on his regular rate, the proper determination of the regular rate "is . . . of prime importance." *Thompson*, 67 F.4th at 1305 (quoting *Youngerman-Reynolds*, 325 U.S. at 424).  Therefore, "[t]he regular rate . . . must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Boyle v. Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017) (quoting *Youngerman-Reynolds*, 325 U.S. at 424).

To state a claim for overtime wages, an FLSA employee must demonstrate that (1) he "worked overtime without compensation," and (2) the employer "knew or should have known of the overtime work." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1314–15 (11th Cir. 2007).

Here, although the district court correctly held that Guevara was eligible for overtime under individual coverage as a domestic service employee, it erred by granting summary judgment in favor of the Zamoras because a genuine dispute exists regarding Guevara's regular hourly rate and, therefore, his overtime rate.  The parties agreed that Guevara worked an average of 57 hours a week which necessarily meant that he had 17 hours of overtime each week.  *See* 29 U.S.C. § 207(a)(1).  However, the parties disagreed about Guevara's hourly rate.  Guevara claims that the Zamoras

paid him an hourly rate of approximately $11.98 from May 2004 through May 2020, and an hourly rate of $11.68 from May 2020 through July 2020.[3]  During depositions, Robert Zamora testified that they paid Guevara an hourly rate of "$9.46 more or less," whereas Maria Zamora testified they paid Guevara an hourly rate of $9.60.  In their Statement of Undisputed Material Facts, the Zamoras maintained his hourly rate was $9.62.  The Zamoras, however, did not maintain contemporaneous records to document the actual hourly rate, and Guevara's paystubs did not include the hours worked for each pay period.

Given the inconsistent testimony and conflicting documentation regarding Guevara's hourly rate, the parties also could not agree on Guevara's overtime rate.  Guevara contends that he should have received an overtime rate of $17.97 based on an hourly rate of $11.98.  The Zamoras maintain that Guevara's overtime rate was $14.43 and that they generously paid him a higher rate of $15 per hour.  They point to Maria Zamora and Guevara's handwritten notes as support that the overtime pay rate was $15 an hour.  However, the Zamoras' proffered rates do not add up to the actual amount Guevara was paid weekly.  *See supra* note 3.  Further, although Guevara concedes that Maria Zamora's note states an hourly rate of $15 for the hours he worked above his typical 57-hour workweek, he denies that he wrote a $15 an hour pay rate on either set of notes and denies that he was paid a $15 overtime rate.

---

[3] On appeal, Guevara asserts that he received an hourly rate of $11.05.

From all this conflicting evidence, the district court inferred that, based on both sets of handwritten notes, "Plaintiff effectively concedes that he understood his overtime hourly wage was about $15." The court decided that Guevara's testimony could not overcome the handwritten notes and proclaimed, "that where the only evidence in support of a plaintiff's claim is the plaintiff's own sworn statements (affidavit or deposition testimony), which are undermined by the plaintiff's prior writings, the plaintiff cannot survive summary judgment." However, at summary judgment, there is no basis to construe Guevara's notes against him because they could be interpreted in favor of either party and no basis to credit the Zamoras' post-lawsuit explanation for how they arrived at this rate of pay in light of the contradictory evidence.

First, we have held that a party's "self-serving and/or uncorroborated" testimony can create "a genuine dispute concerning an issue of material fact" if it is based on personal knowledge. *See United States v. Stein*, 881 F.3d 853, 858 (11th Cir. 2018) (*en banc*). Second, the Zamoras did not keep accurate and adequate records, so Guevara could carry his burden by submitting evidence, sufficient to create an issue of fact, that he "performed work for which he was improperly compensated" and evidence of "the amount and extent of that work as a matter of just and reasonable inference." *Jenkins v. Anton*, 922 F.3d 1257, 1271 (11th Cir. 2019) (citation omitted). Yet the district court erroneously drew the inference – that Guevara's overtime pay was $15 – in favor of the *moving* party, which is inappropriate at summary judgment. *St. Charles Foods, Inc.*, 198 F.3d at 819.

The actual pay rate is a question of fact that must be resolved under the FLSA's requirements. *See Youngerman-Reynolds*, 325 U.S. at 424–25 ("The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact."). The evidence presented creates a genuine issue as to Guevara's actual pay rate, and that fact should be determined by a jury. *Baxter*, 54 F.4th at 1253. Therefore, the district court erred in granting the defendants' motion for summary judgment. *See Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1160 (11th Cir. 2022) ("If the moving party fails to show that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, then summary judgment should be denied[.]" (internal quotation marks and citation omitted)). Accordingly, we reverse the district court grant of summary judgment in favor of the Zamoras on the FLSA overtime compensation claim.

### B. Joint Employer Status

An employee also can be eligible for overtime if he is employed by an entity "engaged in commerce or in the production of goods for commerce" such as Lafise. *Josendis*, 662 F.3d at 1298–99 (quoting 29 U.S.C. § 207(a)). To that end, Guevara contended that Lafise was one of his "joint employers," and thus it was also liable under FLSA for unpaid overtime. Guevara now challenges the

district court's ruling, in its first opinion and order, that Lafise was not Guevara's joint employer.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." *McKay v. Miami-Dade Cnty.*, 36 F.4th 1128, 1132 (11th Cir. 2022) (quoting 29 U.S.C. § 203(d)).  Also, the "FLSA specifically cover[s] 'joint employment' relationships." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996).  Although the FLSA does not explicitly define "joint employer" or "joint employment," the Supreme Court and the U.S. Department of Labor recognize that "a single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA]."  *See* 29 C.F.R. § 791.2(a); *Falk v. Brennan*, 414 U.S. 190, 195 (1973) (recognizing joint employer status); *see also Antenor*, 88 F.3d at 929 (stating that the FLSA "make[s] it clear that a[n] [employee] can be economically dependent on, and thus jointly employed by, more than one entity at the same time").

Whether an entity qualifies as a joint employer within the meaning of the FLSA is a question of law.  *Aimable v. Long & Scott Farms*, 20 F.3d 434, 440 (11th Cir. 1994) (citing *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986)).  However, the subsidiary findings underlying that legal determination constitute issues of fact. *Patel*, 803 F.2d at 634 n.1.

To determine whether an entity qualifies as a joint employer under the FLSA, courts consider the following inexhaustive factors: (1) "the nature and degree of control of the workers;" (2) "the

degree of supervision, direct or indirect, of the work;" (3) "the power to determine the pay rates or the methods of payment of the workers;" (4) "the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers;" (5) "preparation of payroll and the payment of wages;" (6) "ownership of facilities where work occurred;" (7) "performance of a specialty job integral to the business;" and (8) "investment in equipment and facilities." *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1294 (11th Cir. 2016) (alterations adopted) (quoting *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012)). We call these factors the "*Aimable* factors." *Id.*; *see also Aimable*, 20 F.3d at 438–44.

When applying the *Aimable* factors, courts should not "fixat[e] on whether the [employee] is relatively more dependent on one putative employer than the other." *Garcia-Celestino*, 843 F.3d at 1294. Instead, courts "should separately focus on the [employee]'s relationships with each putative employer." *Id.* Thus, "the ultimate question" when determining whether an entity qualifies as a joint employer under the FLSA "is whether, as a matter of 'economic reality,' the hired individual is 'economically dependent' upon the hiring entity." *Id.* (citation omitted).

Guevara introduced evidence that he performed some services for Lafise and evidence that Lafise and LAFS prepared and issued his semi-monthly paychecks. Despite this evidence, in its first order and opinion, the district court found that Guevara "never worked for, nor received any compensation from, Lafise Corp.[,]" and held that Guevara was not eligible for overtime pay

under FLSA "enterprise coverage." In making this determination, the district court did not acknowledge or address any of the facts in the record that Guevara introduced regarding the *Aimable* factors.

In his motion for reconsideration, Guevara objected to the district court's ruling that Lafise was not a joint employer for purposes of liability, and he again identified facts in the record he contended supported a finding in his favor on this point or warranted a jury trial. However, the district court never revisited the issue of whether Guevara was jointly employed by Lafise. Instead, it only addressed Guevara's standing to bring an FLSA claim under "individual coverage" based on the fact that the Zamoras employed him as a domestic service employee. Based on that issue alone, the court held "the determination regarding FLSA coverage is reconsidered and altered."

In both opinions, the district court failed to provide a sufficient explanation to support its ruling regarding whether Lafise was a "joint employer" under the FLSA, and we therefore cannot evaluate whether the district court erred in reaching that legal conclusion. *See Danley v. Allen*, 480 F.3d 1090, 1091 (11th Cir. 2007) ("[T]his Court has admonished district courts that their orders should contain sufficient explanations of their rulings so as to provide this Court with an opportunity to engage in meaningful appellate review."); *see, e.g.*, *Clay v. Equifax, Inc.*, 762 F.2d 952–58 (11th Cir. 1985) (collecting cases in which the Supreme Court and this Court's predecessor Court encouraged district courts to explain the reasons for their decisions "and the underlying predicate"); *In re*

*Ford Motor Co.*, 345 F.3d 13315, 1317 (11th Cir. 2003) (vacating a discovery order because the district court "provided no substantive explanation for the court's ruling"). Further, the record contradicts the district court's sole factual finding that Guevara never received compensation from Lafise.

Accordingly, we vacate the district court's joint employer status determination, and thus its grant of summary judgment in favor of Lafise, and remand to the district court to provide sufficient reasoning as to whether Lafise qualifies as a joint employer under the FLSA by applying the *Aimable* factors—the governing standard for determining joint employer status. *See Layton*, 686 F.3d at 1177 (stating that the *Aimable* factors are "tools to be used to gauge the degree of dependence of alleged employees on the business to which they are connected"); *Garcia-Celestino*, 843 F.3d at 1295 (stating that the *Aimable* factors represent the proper "governing standard for determining whether" an entity "qualifies as a joint employer").

## IV. CONCLUSION

Based on the foregoing, we **REVERSE** the district court's grant of summary judgment in favor of the Zamoras, **VACATE** the district court's ruling on joint employment status, and thus its grant of summary judgment in favor of Lafise, and **REMAND** this case for further proceedings consistent with this opinion.