**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10780

Non-Argument Calendar

_____

KENNETH MARK POHLMANN,

*Plaintiff-Appellant,*

*versus*

LISA NOLES,

*Defendant-Appellee,*

AMELIA HILL, et al.,

*Defendants.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:23-cv-00019-TKW-MAF

_____

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

Kenneth Mark Pohlmann, proceeding *pro se*, appeals the district court's grant of summary judgment to Lisa Noles on his claims of deliberate indifference under 42 U.S.C. § 1983. On appeal, Pohlmann argues that the district court erred in granting summary judgment because Noles demonstrated deliberate indifference to his serious medical needs. After careful review, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

*A. Factual Background*

The facts in the record construed in the light most favorable to Pohlmann, the nonmoving party, are as follows. *See Guevara v. Lafise Corp.*, 127 F.4th 824, 828 (11th Cir. 2025).

Pohlmann has been in the custody of the Florida Department of Corrections ("FDC") since May 30, 2018.[1] Within the FDC, Pohlmann has been incarcerated at Madison Correctional Institution ("Madison C.I.") since May 10, 2021. Prior to his incarceration at Madison C.I., Pohlmann was held at the Orlando Reception Center, Jackson Correctional Institution ("Jackson C.I."), the Northwest Florida Reception Center, and Wakulla Correctional Institution ("Wakulla C.I.").

In 2018, while incarcerated at Jackson C.I., Pohlmann began experiencing lingering stomach issues. In 2020, nurses assessed Pohlmann's condition to be irritable bowel syndrome ("IBS").

---

[1] Pohlmann does not argue his medical care before March 9, 2022, was unconstitutional or otherwise inadequate. We provide these additional background details for context.

Medical staff in Jackson C.I.—and then in Wakulla C.I. after he was transferred—prescribed Pohlmann Imodium to treat his IBS. When Pohlmann was transferred to Madison C.I., staff informed him that his prescription for Imodium would be transferred to the new facility as well.

After Pohlmann arrived at Madison C.I. in May 2021, he experienced worsening symptoms, including "severe cramping, abdominal pain, bloating, gas, diarrhea . . . occasional constipation . . . [and] excessive bowel movements." During this time, Pohlmann testified that he was "still in pain and . . . going [to the bathroom] 8 to 10 times every single day [and was] in tears." Between May and November 2021, he submitted sick call requests on a nearly monthly basis due to these symptoms.[2] The medical staff in Madison C.I., including Dr. Alvia Varona and nurse Lisa Noles—the appellee here—saw Pohlmann during visits that corresponded to his sick call requests. During these sick call visits Noles and the primary care provider would prescribe pills and recommend treatments, and Dr. Varona, the supervising physician, would approve those treatments.

Between May 2021 and June 2022, during and after sick call visits and mental health evaluations, Noles and the Madison C.I. medical staff managed Pohlmann's symptoms and performed diagnostic tests. Pohlmann received probiotics, fiber, Ibuprofen, and Imodium tablets, multiple rounds of blood work, multiple stool

---

[2] "Sick calls" refer to an inmate's request for non-urgent medical attention. There is no evidence that Pohlmann requested urgent medical attention.

samples, an abdominal X-ray, a sonogram, a visit with a gastrointestinal ("GI") doctor on January 7, 2022, and a colonoscopy on March 9, 2022. Pohlmann acknowledged that "all the blood work, stool samples, X-ray, sonogram, and colonoscopy results came back negative." Based on those negative test results, the medical staff did not give Pohlmann any additional diagnoses.

In June 2021, Pohlmann reported that the fiber tablets were working and informed the medical staff that he felt the best he had in three years. That said, in August, Pohlmann told Noles that, while the fiber tablets "helped at first," he had not taken them "for 10 days." Pohlmann requested Imodium pills, which he had been prescribed in the past. During that month, Noles ordered Pohlmann additional stool cultures and an abdominal X-ray, provided him Imodium, and recommended that Pohlmann continue taking the fiber tablets, which had been effective in the past. Pohlmann submitted an informal grievance report in October 2021 about the level of care he was receiving, and Shelly Bearden, Assistant Warden at Madison C.I., learned of his stomach condition on the same date. In November 2021, the medical staff provided Pohlmann with additional Imodium pills and ordered a consultation with a GI specialist.

On December 14, 2021, Pohlmann, through his aunt, submitted a complaint to the Department of Corrections Inspector General that included a request for permission to use the bathroom when needed. Pohlmann also alleged various instances of staff misconduct that had occurred in the previous two weeks. The next

day, the Inspector General's Office forwarded Pohlmann's electronic complaint to Amelia Hill, Warden of Madison C.I. Hill learned of Pohlmann's stomach condition at this time. Upon investigation, the prison authorized Pohlmann to access the bathroom at all times, without expiration. Bearden also approved Pohlmann's December 2021 grievance, granting Pohlmann access to the bathroom during "count."[3] During his deposition, Pohlmann acknowledged that he had not been denied access to the bathroom since, nor disciplined for such use.

During Pohlmann's January 7, 2022, appointment, the GI specialist provided him thirty more Imodium pills and recommended that he take the pills as needed. The GI specialist recommended Pohlmann undergo a colonoscopy, and Dr. Varona approved that recommendation. While taking the Imodium pills every third day, Pohlmann saw improvement and was able to use the restroom a "reasonable" number of times each day.

Pohlmann then stopped taking the fiber pills, despite believing the pills to be his "only" working medicine. Although Pohlmann "assume[d]" that the medical staff would provide him a modified diet to help with his symptoms, he never requested one, so he did not receive one. He continued to submit sick calls, in which his primary request was for additional Imodium pills. Noles did not prescribe Pohlmann the additional Imodium that he requested because she believed that long-term use of Imodium causes liver

---

[3] "Count" refers to a period of time when inmates are generally required to stay in their cells and not move within the prison facilities.

damage.  Pohlmann disagreed with Noles' decision not to prescribe him Imodium and continued to request more Imodium pills.

At the GI specialist's recommendation, Pohlmann received a colonoscopy on March 9, 2022.  According to Pohlmann, the results were "negative."  The other diagnostic testing did not show abnormalities either.  Pohlmann filed at least six grievances between March and May 2022 requesting more Imodium pills.  In response to each grievance, staff instructed Pohlmann to initiate sick calls to obtain prescription refills.  On June 27, Pohlmann attended his last sick call before filing this lawsuit, where Noles provided him with somewhere between five and ten Imodium pills.  Pohlmann did not file another sick call request about his stomach issue after the June 27 visit.  On September 14, a nurse informed Pohlmann that he was scheduled for medical care through the prison's "chronic clinics."

*B. Procedural History*

Pohlmann filed his *pro se* 42 U.S.C. § 1983 complaint against Noles, Hill, Bearden, Dr. Varona, and Ricky Dixon, Secretary of the FDC on January 11, 2023.[4]  On February 23, Pohlmann

---

[4] After filing his complaint, Pohlmann attended a "chronic clinic" in April 2023 and a nurse renewed his medication.  Then, after returning to the clinic with a separate issue and complaints about stomach pain, the nurse instructed Pohlmann to place a sick call.  Later, Pohlmann placed a sick call request.  Medical staff took additional stool and blood samples and provided Pohlmann three Imodium pills.

25-10780                 Opinion of the Court                 7

amended his complaint to remove Dixon as a defendant and to assert Eighth Amendment claims against each named defendant in their official and individual capacities for deliberate indifference to his serious medical needs.  Pohlmann alleged that Noles prescribed him an insufficient number of Imodium pills, delayed his treatment, and refused to order additional diagnostic tests or examinations.  Pohlmann also disputed that negative test results "excuse[d] Dr. Varona from 'deliberate indifference' to a serious medical need."  Pohlmann's claim was based solely on his care between March 10, 2022, the day after his colonoscopy, and February 23, 2023, the filing of his amended complaint.  Pohlmann's amended complaint requested injunctive relief, nominal damages, damages for severe pain and suffering, and punitive damages.[5]

Noles moved to dismiss the amended complaint for failure to state a claim for relief.  She asserted that Pohlmann's claim of misdiagnosis did not meet the deliberate indifference standard and that his punitive damages claim should be stricken for failure to allege requisite intent.  The district court dismissed Pohlmann's claims for injunctive relief and official-capacity claims against all defendants but permitted Pohlmann's individual-capacity Eighth Amendment claim to proceed.[6]

---

[5] On appeal, Pohlmann only challenges the summary judgment ruling against Noles.  We therefore do not discuss the other defendants further.

[6] See Pohlmann v. Noles, No. 4:23-cv-00019, 2024 WL 331639 (N.D. Fla. Jan. 4, 2024), report and recommendation adopted in part, 2024 WL 331612 (N.D. Fla Jan. 29, 2024).

After discovery, Noles moved for summary judgment. She argued that Pohlmann's significant course of medical treatment and diagnostic testing showed that she did not act with deliberate indifference. Instead, she argued, the record showed a disagreement over treatment. Noles attached a FDC chronological record of Pohlmann's health care to her motion. In response, Pohlmann pointed to his Seminole County medical records and declarations by inmates at Madison C.I. who testified to witnessing Pohlmann's IBS symptoms and his attempts to obtain medical care.

The magistrate judge prepared a Report and Recommendation ("R&R") recommending that the district court grant summary judgment to Noles because Pohlmann failed to establish deliberate indifference to a serious medical need. First, the R&R assumed without deciding that Pohlmann had shown a serious medical need. Then, the R&R analyzed the officials' response to that need. It explained that the defendants, collectively, "ordered blood tests, stool samples, an abdominal X-ray, a GI specialist visit, and a colonoscopy," and that all the results were normal. It also explained that they attempted to treat Pohlmann's symptoms with "fiber pills, probiotics, mental health counseling, Ibuprofen, and even [Pohlmann's] preferred treatment option—Imodium pills." The R&R reasoned that Pohlmann's treatment ended only when he stopped seeking medical attention. Distinguishing between cases where incarcerated people disagree over their course of treatment and instances of deliberate indifference, the R&R concluded that the de-

fendants responded reasonably under the circumstances and Pohlmann could not show that the treatment he received "caused injury, or even caused a delay in treatment."

Pohlmann raised four objections to the R&R.  First, he objected to the defendants' argument that he failed to establish a deliberate indifference claim after he admitted that he "gave up acquiring satisfactory medical treatment."  He classified this as a clerical error in his petition and argued that he meant that Noles provided "unsatisfactory medical treatment."  Second, he claimed he did not receive medical treatment for ten months following his June 27, 2022, appointment with Noles.  Third, regarding why he never requested any changes to his diet, Pohlmann argued that because he was not a certified dietician he was, therefore, not qualified to make a recommendation about the best medical treatment and diet, and the defendants failed to do as well.  Fourth, he cited decisions of the Second Circuit and Seventh Circuit, involving evidentiary disputes at the summary judgment stage, in support of his position that summary judgment should be denied.

The district court overruled Pohlmann's objections, adopted the R&R, and entered summary judgment for the defendants.  Pohlmann timely appealed.

## II. STANDARDS OF REVIEW

"We review the district court's granting of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the non-moving party." *Guevara*, 127 F.4th at 828. "Summary judgment is appropriate when no genuine dispute of

material fact exists and a party is entitled to judgment as a matter of law." *Id.* at 828–29. "A dispute of fact is genuine if a reasonable jury could return a verdict for the non-moving party." *Id.* at 829. The burden of proof for a summary judgment motion initially rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party carries its burden for its motion, the burden shifts to the nonmoving party to provide specific facts establishing a genuine issue of material fact for trial. *Matsuhisa Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

We construe *pro se* pleadings and briefs liberally. *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986); *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). "Yet even in the case of pro se litigants this leniency does not give [us] license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell*, 760 F.3d at 1168–69 (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III. DISCUSSION

The issue before us is whether Noles was entitled to summary judgment as to Pohlmann's Eighth Amendment deliberate indifference claim. Based on the record before the district court, we conclude that summary judgment was appropriate.

To prevail on a Section 1983 civil rights action, a plaintiff must show that a person acting under color of state law deprived him of a federal right. 42 U.S.C. § 1983; *Griffin v. City of Opa-Locka*,

261 F.3d 1295, 1303 (11th Cir. 2001). The Eighth Amendment prohibits the infliction of cruel and unusual punishments. U.S. CONST. amend. VIII. In line with this prohibition, government officials may not be deliberately indifferent to a prisoner's serious medical needs. *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (*en banc*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). To establish deliberate indifference, a plaintiff must establish that a prison official acted with "subjective recklessness." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). Under this standard, a government official is deliberately indifferent when the official: (1) is subjectively aware of the risk of serious harm to the prisoner; (2) disregards that risk; and (3) is subjectively aware that her action—or inaction—puts the prisoner at substantial risk of serious harm. *Id.* at 1255, 1258. An official cannot be held liable under the Eighth Amendment if she has the requisite subjective awareness of the risk to the incarcerated person but responded reasonably to that risk. *Id.* at 1262.

The medical care of incarcerated persons need not be "perfect" or "the best obtainable" to satisfy the Eighth Amendment. *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)). Instead, to violate the Eighth Amendment, medical treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quoting *Harris*, 941 F.2d at 1505). Accordingly, our caselaw has distinguished between medical provider negligence in diagnosing or treating medical conditions—which may violate state tort law—

and deliberate indifference that violates the Eighth Amendment. *Estelle*, 429 U.S. at 106; *see also Harris*, 941 F.2d at 1505; *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). For similar reasons, a difference in opinion between a prison's medical staff and an incarcerated person as to an appropriate course of treatment is insufficient, standing alone, to prevail on an Eighth Amendment claim. *Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Harris*, 941 F.2d at 1505.

As noted above, Pohlmann only contests his medical treatment between March 10, 2022, the day after his colonoscopy, and February 23, 2023, the day he filed his amended complaint in federal court. The record shows that Pohlmann visited with a medical specialist on January 7, 2022, and had sick call visits in March and April 2022. As noted above, Noles and the Madison C.I. medical staff used a variety of measures in their attempt to manage Pohlmann's symptoms: probiotics, fiber, and Ibuprofen tablets; Imodium tablets on multiple occasions; several rounds of blood work; multiple stool samples; an abdominal X-ray; a sonogram; a visit with a GI doctor; and a colonoscopy. Pohlmann filed at least six grievances between March and May 2022 to request more Imodium pills. In response to each grievance, staff instructed Pohlmann to request prescription medication through sick call visits. On June 27, Pohlmann attended his last sick call before filing this lawsuit, where Noles provided him with somewhere between five and ten Imodium pills.

Such consistent medical treatment does not establish or even suggest deliberate indifference. *Hoffer*, 973 F.3d at 1271. Nor does Pohlmann argue that the defendants denied him care when he requested it or had to wait a long time before he was seen. At most, the evidence shows the parties disagreed over the course of Pohlmann's medical treatment, which Pohlmann himself acknowledged he was not in the best position to decide. *Waldrop*, 871 F.2d at 1033; *Harris*, 941 F.2d at 1505. Moreover, he admitted that Noles would not prescribe him more Imodium because she was concerned it could cause liver damage or other serious health problems, which does not suggest that Noles was putting him at substantial risk of serious harm. *See Wade*, 106 F.4th at 1255.

In his brief, Pohlmann first argues that Noles never sought summary judgment regarding his claim of deliberate indifference as to his abdominal pain and it was thus improper for the district court to grant her motion on that ground. However, Noles addressed Pohlmann's claim in her motion for summary judgment, so it was proper for the district court to address that issue in its ruling on Noles' motion as well. *See Chapman v. Dunn*, 129 F.4th 1307, 1318–19 (11th Cir. 2025) (addressing sufficient notice for summary judgment motions).

Second, Pohlmann argues that the district court erred in characterizing his claim as a mere disagreement about medical treatment when rejecting his Eighth Amendment claim. Again the record, however, shows that Noles repeatedly responded to Pohl-

mann's medical complaints through the sick call visits, the dispensing of medicine, and general advice on ways to alleviate his symptoms. *See Waldrop*, 871 F.2d at 1035 (explaining that a "difference in medical opinion," standing alone, does not amount to deliberate indifference); *cf. Wade*, 106 F.4th at 1261 (defining "subjective recklessness" as requiring a provider to be "actually aware that his own conduct caused a substantial risk of serious harm to the plaintiff").

Next, Pohlmann contends there were genuine disputes of material fact as to whether Noles intentionally interfered with his medical treatment. Of course, "grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference." *Waldrop*, 871 F.2d at 1035. So, if Pohlmann were right that Noles intentionally advocated for a "less efficacious course of treatment," it might suggest deliberate indifference. *Id.* However, no reasonable jury could, on this record, conclude she engaged in such behavior. There is no evidence that the course of treatment Pohlmann received was "less efficacious" than another course of treatment, let alone that it was "grossly incompetent" based on the circumstances shown by this record. *Hoffer*, 973 F.3d at 1271. Accordingly, the district court did not err in this respect either.

Finally, Pohlmann argues that the district court erred in granting summary judgment based on its finding that Pohlmann stopped going to sick call without considering that he only stopped

25-10780            Opinion of the Court            15

after Noles refused to provide him more Imodium.[7]   Still, Pohlmann does not explain what additional tests he could have received from sick call that he did not receive.  *See Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.").[8]

---

[7] Pohlmann also argues that the cost of sick call visits prevented him from seeking further care.  However, Pohlmann did not raise any issue about the cost of sick call visits before the district court, and we will not consider that issue in the first instance on appeal.  *See Finnegan v. Comm'r*, 926 F.3d 1261, 1271 (11th Cir. 2019) ("The general rule is that we will not consider an issue raised for the first time on appeal.").

[8] Finally, while Pohlmann has pointed to nonbinding case law that he asserts supports his claim, none of these cases alter our conclusion, as they address issues not presented here.  *See Wilson v. Williams*, 997 F.2d 348, 350–351 (7th Cir. 1993) (reversing and remanding a grant of summary judgment because the district court improperly weighed the credit of two directly conflicting affidavits as to an altercation between a pretrial detainee and officers); *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (vacating and remanding a grant of summary judgment because genuine issues of material fact existed over an inmate's allegations of First Amendment violations), *Carroll v. Yates*, 362 F.3d 984, 985–86 (7th Cir. 2004) (vacating and remanding a grant of summary judgment because genuine issues of material fact existed as to inmate's allegations of retaliation and excessive force); *Taylor v. Rodriguez*, 238 F.3d 188, 194–95 (2d Cir. 2001) (vacating in part a grant of summary judgment because genuine issues of material fact existed as to inmate's due process claims).

## IV. CONCLUSION

For the reasons provided, Noles was entitled to summary judgment, and the district court did not err in granting her motion. We, therefore, affirm.

**AFFIRMED**.